# EXHIBIT "K"

# Nelson
# Mullins

**Nelson Mullins Riley & Scarborough LLP**
Attorneys and Counselors at Law
Atlantic Station / 201 17th Street, NW / Suite 1700 / Atlanta, GA  30363
Tel: 404.322.6000  Fax: 404.322.6050
www.nelsonmullins.com

Mark S. VanderBroek
Tel: 404.322.6675
mark.vanderbroek@nelsonmullins.com

March 21, 2017

<u>**Via Email and Federal Express**</u>

Jeffrey S. Lynch
The Lynch Law Firm
5626 Preston Oaks Road, 18D
Dallas, Texas 75254

      Re:    Exclusive Legal Marketing's Infringement of Montlick & Associates' Trademarks
             and Other Deceptive and Misleading Trade Practices

Dear Mr. Lynch:

      This letter responds to your February 27, 2017 letter, which failed to acknowledge, much less address, Exclusive Legal Marketing's ("ELM") deceptive and misleading conduct designed to divert potential clients of Montlick & Associates ("Montlick") to ELM, and through ELM to law firms to which ELM refers cases.

      Your letter incorrectly contends that because the ELM sponsored advertising links displayed when someone searches for Montlick on Google do not include the MONTLICK Mark, there can be no likelihood of confusion, and thus no trademark infringement.  To the contrary, "[w]hether Defendant's sponsored advertisements actually include [Plaintiff]'s trademarks in the text [of the ad] is not determinative of whether there has been any infringement." *Fair Isaac Corporation v. Experian Information Solutions, Inc.,* 645 F.Supp2d 734, 760-761 (D. Minn. 2009).

      Instead, as you acknowledge in your letter (at footnote 1), and many courts have explained, the question of likely confusion in a keyword advertising case turns in large part on "the labeling and appearance of the advertisements and the surrounding context on the screen displaying the results page," and "what the consumer saw on the screen and reasonably believed, given the context." (Quotations from cases cited in note 1 of your letter.)  The actionable wrong in a keyword advertising case is "the diversion of potential customers to defendant's site [or phone number] through the use of the plaintiff's mark" to create initial interest confusion, not whether confusion of source exists at the time of later purchase of the goods or services at issue. *Soilworks, LLC v. Midwest Industrial Supply, Inc.,* 575 F.Supp.2d 1118, 1132 (D. Ariz. 2008).

*With offices in California, Colorado, District of Columbia, Florida, Georgia, Massachusetts, New York, North Carolina, South Carolina, Tennessee, and West Virginia*

Jeffrey S. Lynch
March 21, 2017
Page 2

In the present case, ELM's conduct – including but not limited to the content of its advertising links for personalinjurycare.net and the context in which such ads appear in response to Google searches for Montlick – indicate a high likelihood of both initial interest confusion and more traditional confusion as to source.  Here:

1. ELM purchases MONTLICK Marks as keywords for its Google search engine advertising.

2. As a result, when potential clients or others trying to contact Montlick do a Google search for Montlick on their mobile phones or computers, the search results almost always include an advertising link for ELM's personalinjurycare.net website and phone number as the first or second search result.

3. The captions of and statements in ELM's advertising links for personalinjurycare.net suggest that the ad is for a personal injury law firm such as Montlick, but the advertising links do not identify any lawyer or law firm, or even ELM, as the source of the ad, and thus leave consumers unable to discern its source or to determine that it is not an ad for Montlick.

4. The personalinjurycare.net advertising links displayed on mobile phones include a one-touch call button that automatically connects the user by phone to a call center operated by ELM.

5. Those phone calls are answered by ELM intake personnel who intentionally do not identify the name of any lawyer or law firm when they answer the phone, but instead answer with a generic greeting such as "personal injury office," so as to continue the ruse of having the caller believe that he or she has contacted Montlick.

6. After gathering information about the caller's accident and injuries, ELM's intake personnel send client contracts to these prospective clients by text messages shown as coming from "personalinjurycare.net" that do not identify any lawyer or firm name, and ask the prospects to accept the contract by clicking on the signature block on their phones.

7. The proposed contracts that are sent do not identify the law firm names on the front page of the contract or in any prominent place or manner, but only in the fine print of the contract terms themselves.  In this manner, ELM seeks to wrongfully induce prospective clients trying to reach Montlick into engaging Monge & Associates, or other firms to whom it refers cases, without clearly identifying the firm which is being engaged.

Jeffrey S. Lynch
March 21, 2017
Page 3

      8.  In addition, ELM permits firms to whom it refers cases to use the personalinjurycare.net text message platform to send contracts to potential clients for signature, in the same manner described above and with contracts that do not clearly or conspicuously identify the firm which is being engaged. Montlick is aware of multiple instances of actual confusion resulting from this practice, in which potential clients signed or nearly signed contracts to be represented by Monge & Associates, thinking that they were retaining Montlick.

As this list indicates, ELM's scheme goes far beyond merely using the MONTLICK Marks as keywords to trigger ELM's online advertising. Instead, ELM's conduct amounts to a concerted and well-orchestrated scheme and plan to mislead and deceive prospective clients seeking to contact Montlick (and the other personal injury firms who also are targets of ELM's conduct), and to divert them to ELM's call center where ELM then misleadingly seeks to have them retain other law firms. This scheme and conduct is more than sufficient to both state and prove claims for trademark infringement and unfair and deceptive trade practices. *See, e.g., Binder v. Disability Group, Inc.,* 772 F.Supp.2d 1172 (C.D. Cal. 2011) (law firm's purchase of a competing law firm's trademark as a search engine advertising keyword held to amount to trademark infringement, false advertising, and unfair trade practices); *Soilworks,* 575 F.Supp.2d at 1132 (granting summary judgment to plaintiff in Lanham Act trademark infringement claim, where defendant used plaintiff's mark as keywords to divert plaintiff's potential customers to defendant's website); *Hearts On Fire Co. v. Blue Nile, Inc.,* 603 F.Supp.2d 274, 288-89 (D. Mass. 2009) (denying motion to dismiss keyword advertising infringement claim, where the context surrounding the defendant's advertising supplied a basis to support consumer initial interest confusion, and where after clicking on the sponsored link there was nothing on defendant's website to indicate a mistake had been made); *Morningware, Inc. v. Hearthware Home Products, Inc.,* 673 F.Supp.2d 630, 638 (N.D. Ill. 2009) (denying motion to dismiss claim for initial interest confusion, where defendant's advertising link did not mention either plaintiff or defendant and could mislead consumers to believe that the link was associated with plaintiff); *LBF Travel, Inc. v. Fareportal, Inc.,* 2014 WL 5671853 at *9 (S.D.N.Y. Nov. 5, 2014) (allegations that an Internet search on plaintiff's mark presented search results with sponsored advertising links for both plaintiff and defendant, that defendant's ad did not include plaintiff's mark, and that users may click on defendant's ad link believing that it is related to or sponsored by plaintiff, is sufficient to state a claim for trademark infringement based on misleading keyword advertising).

Your letter mentions that Montlick engages in limited search engine advertising through Google AdWords. But, as your letter and its enclosure indicate, Montlick's ad links clearly identify "Montlick & Associates" as the source of the ads, so that there is no likelihood of confusion. As such, Montlick's conduct is analogous to that found proper in the Texas Bar's ethic advisory opinion quoted in your letter. In that advisory opinion, the Professional Ethics Committee considered a scenario where Lawyer A used Lawyer B's name as a keyword and Lawyer A's resulting sponsored advertisement "*causes Lawyer A's name* and a link to his website *to be displayed,*" in a link that also "may contain additional text concerning Lawyer A and his practice." Professional Ethics Committee for the State Bar of Texas, Opinion No. 661

Jeffrey S. Lynch
March 21, 2017
Page 4

(July 2016) (emphasis added).   Under those circumstances, where Lawyer A was clearly identified in the ad link as the source of the ad, the Committee concluded that Lawyer A's conduct would not mislead consumers.[1]

That is very different from the present situation, in which ELM's sponsored advertising link for personalinjurycare.net states or suggests that it is an ad for a personal injury law firm (such as Montlick), but does not identify any lawyer or law firm, or even ELM, as the source of the ad, and thus leaves consumers unable to discern its source.  In other words, the content of ELM's ad link, and its lack of source identification, enhances, rather than diminishes, likely confusion.  Since the consumer has searched for Montlick & Associates, or some variation of that name, it is reasonable, if not inevitable, that he or she will believe that personalinjurycare.net is associated with Montlick, and that the ad link contains the phone number for Montlick.

In short, ELM, and its owner and CEO, Coety Bryant, are engaged in a scheme and pattern of false, deceptive, and misleading conduct.  They are misappropriating the goodwill and reputation of Montlick and its MONTLICK Marks to confuse and deceptively induce client prospects seeking to contact Montlick into contacting ELM instead, so that ELM can intercept and steal those prospects by referring them to other lawyers.  As mentioned in my January 23rd and February 27th letters, this conduct amounts to trademark infringement and unfair and deceptive trade practices in violation of the federal Lanham Act, 15 U.S.C. §§ 1114 and 1125(a), the Georgia Deceptive and Unfair Trade Practices Act, O.C.G.A. §10-1-370 *et seq.,* and the common law.

My client has invested over $100 million, and decades of time, to develop the extremely valuable goodwill associated with and represented by its MONTLICK Marks.  As a result, Montlick is vigilant in protecting its trademark and other IP rights.  Montlick cannot allow ELM to continue to misuse the MONTLICK Marks in a manner that confuses and deceives the public and results in unjust enrichment to ELM and to the law firms to which it refers cases.

Your letter closed by inviting me to share additional information about Montlick's concerns, and representing that ELM "remains open to further communications."  I have provided additional information in this letter to confirm what you, ELM, and Mr. Bryant already know – that ELM is misusing my client's MONTLICK Marks as part of its deceptive and misleading scheme to confuse, divert, and steal potential clients from Montlick.  The time for communication is over, and Montlick now needs to see action from your clients.  ***ELM and Mr.***

---

[1] Although the Georgia Bar has not yet specifically addressed the issue, state bar ethics committees in at least two surrounding states have found that a lawyer's purchase and use of other attorneys' names for keyword advertisements violate applicable ethical rules.  *See In Re Turlington,* (N.C. Grievance 13G0121) (attorney censured under Rule 8.4(c) for purchasing and using other attorneys' names and names of other law firms in an internet keyword advertising campaign utilizing Google AdWords); *In Re Naert,* App. Case No. 2015-001244 (S.C. 2015) (lawyer sanctioned for Google AdWord campaign that did not include the name of a lawyer responsible for its content).

Jeffrey S. Lynch
March 21, 2017
Page 5

*Bryant have until April 4, 2017 to cease and permanently desist from ELM's purchasing and use of the MONTLICK Marks in connection with ELM's search engine advertising for personalinjurycare.net* (and for any other lawyer referral website or service that ELM and Bryant are associated with), and for you to contact me to discuss the other issues addressed in my January 23rd letter.

If your clients do not comply with this demand to cease their purchase and use of MONTLICK Marks, then Montlick will take all necessary steps to enforce its legal rights and to protect its trademarks and its potential clients from ELM's misleading and deceptive practices. This would include pursuing a lawsuit, filed in Georgia against ELM *and Mr. Bryant individually*, which would seek an injunction, a disgorgement of ELM's profits under 15 U.S.C. § 1117, and recovery of Montlick's attorneys' fees. It also could include soliciting other personal injury firms in Georgia and across the country, whose trademarks ELM is also misusing as part of its deceptive scheme, to join in Montlick's efforts to stop ELM's improper conduct.

Nothing said in or omitted from this letter shall amount to a waiver of any of Montlick's rights, claims, and remedies, all of which are expressly reserved.

PLEASE BE GOVERNED ACCORDINGLY.

Yours truly,

Mark S. VanderBrock

Cc:  David Montlick, Esq.